## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

COURTNEY GREEN,

               Petitioner,

   v.

ANGEL QUIROS; COMMISSIONER OF CORRECTION,

             Respondent.

3:20 - CV - 1217 (CSH)

**APRIL 27, 2021**

### RULING ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS  [Doc. 5]

**HAIGHT, Senior District Judge:**

## I.  INTRODUCTION

*Pro se* prisoner Courtney Green, currently incarcerated in Osborn Correctional Facility ("Osborn"), a state prison located in Somers, Connecticut, was sentenced in Connecticut Superior Court to twenty-one (21) years of imprisonment after pleading guilty to three counts of assault in the first degree by discharge of a firearm in violation of Conn. Gen. Stat. § 53a-59(a)(5).  His maximum release date is 11/28/2027.[1]

Pending before the Court is Green's "Amended Petition for Writ of Habeas Corpus" [Doc. 5] pursuant to 28 U.S.C. § 2241, seeking relief from detention which he alleges violates the Eighth Amendment of the Constitution.  Doc. 5 (Amended Habeas Corpus Petition), at 1.  Specifically,

---

[1] According to the case record in state court, on July 19, 2008, the Petitioner shot three men outside of a bar and strip club known as "Harry O's" on Selleck Street in Stamford, Connecticut.

Green asserts that he should receive compassionate release from Osborn – "immediate release and/or home confinement" – because he has "serious pre-existing medical conditions which the Centers for Disease Control ("CDC") [the nation's health protection agency] has determined puts [sic] him at a significantly higher risk of severe disease and death if he were to contract Coronavirus Disease 19." *Id.* at 2 (¶ 6). Green names Angel Quiros, the Commissioner of Correction of the State of Connecticut, as Respondent because "Quiros currently has immediate custody over [P]etitioner and is a policy maker for the State of Connecticut." *Id.* (¶ 5).

In support of his Petition, Green alleges that he is "above the age 35," *id.* (¶ 4), and "suffers from hypertension and a compromised immune system," *id.* at 3 (¶ 11). Moreover, at Osborn, he "shares showers, phones, and common areas with over fifty other people, with over twenty of them testing positive for COVID-19, including two prisoners [who] test[ed] positive for COVID-19" on June 29, 2020. *Id.* at 2 (¶ 4). Green further alleges that he has been placed in a separate housing unit, J-1, where he is quarantined with inmates who refused to take the COVID-19 test. *Id.* at 4 (¶ 11). Also, various correctional officers at Osborn refuse to wear face masks, citing the health condition exemption in an executive order by Governor Lamont (which states that an individual is excused from wearing a face mask if he has a medical condition) and/or the fact that the correctional officers' collective bargaining agreement does not require them to wear face masks. *Id.* (¶14).

On information and belief, Green alleges that Correction Officer ("CO") Cutler tested positive for COVID-19 and CO Browne exhibited symptoms of the disease. *Id.* at 5 (¶¶ 18-20). Green also states that various inmates, including first shift kitchen workers and two inmates housed with him in J-1 unit, Johnson and Ackerman, tested positive for COVID-19 on October 25, 2020. *Id.* at 6 (¶¶ 23-27). Furthermore, Green recounts that two inmates with COVID-19 were moved to

B-block but Osborn failed to "comply with public health guidelines" by, for example, failing to provide Personal Protective Equipment ("PPE") for Green, who is "currently required to clean the [J-1] unit" as a "tierman" in that unit. *Id.* (¶¶ 28, 31). Green also states that Osborn has failed to disinfect and sanitize the facility upon receiving the two inmates' positive COVID-19 results. *Id.* at 7 (¶ 33).

Based on the foregoing alleged facts, Green claims that Quiros, the Commissioner of Correction, has violated Green's Eighth Amendment right to be provided humane conditions of confinement. *Id.* (¶¶ 35-36). "[A]bsent proof of judicially-recorded findings by clear and convincing evidence that [Green] poses such a serious risk of flight or danger to others that no other conditions can mitigate with[in] 24 hours," Green seeks release from custody or transfer to home confinement. *Id.* (¶ 37). If he is not granted release upon his paper submissions alone, he requests an evidentiary hearing and/or oral argument by telephone or video conference. *Id.* (¶ 38).

## II. DISCUSSION

Petitioner Green has moved for compassionate release from prison pursuant to 28 U.S.C. § 2241 and 18 U.S.C. § 3582(c)(1)(A)(i), which provides for compassionate release of *federal prisoners* in extraordinary and compelling circumstances. However, Green is not a federal prisoner so cannot bring either a § 2241 claim or § 3582(c) claim.

With respect to § 2241, as the Second Circuit explained in *Cook v. New York State Division of Parole*, 321 F.3d 274 (2d Cir. 2003), "[t]he fact that [the petitioner] invoked section 2241 d[oes] not . . . require the district court to treat it as a section 2241 petition." 321 F.3d at 277. "On the contrary, if an application that should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under section 2241, the district court must treat it as a section 2254 application instead. [I]t is the

substance of the petition, rather than its form, that governs." *Id.* at 277-78 (citation and internal quotation marks omitted).

Pursuant to § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "A state prisoner . . . not only may, but according to the terms of [S]ection 2254 *must*, bring a challenge to the execution of his or her sentence . . . under [S]ection 2254." *Cook*, 321 F.3d at 278 (emphasis added). It thus follows that a district court "correctly treat[s] [the Petitioner's] petition as an application under [S]ection 2254" when that application is filed "in behalf of . . . a person in custody pursuant to the judgment of a State court . . . on the ground that [the person applying] is in custody in violation of the Constitution . . . of the United States." *Id.* (quoting 28 U.S.C. § 2254(a)). As in *Cook*, that description "characterizes [Green's] petition precisely." *Id.*

Because Green, a state prisoner, seeks immediate release from incarceration, his application is appropriately framed as a § 2254 petition for a writ of habeas corpus. *See, e.g., Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus" under § 2254.); *Phelps v. Superintendent, Gouverneur Corr. Facility*, No. 20 CIV. 10352 (KPF), 2020 WL 7711619, at *1 (S.D.N.Y. Dec. 29, 2020) ("Because Petitioner seeks immediate release from incarceration, it appears that this application should be construed as a petition for a writ of habeas corpus under § 2254."); *Steward v. Wolcott*, No. 20-CV-6282-FPG, 2020 WL 2846949, at *4 (W.D.N.Y. June 2, 2020) ("As other judges have found in similar cases in this

4

District and this Circuit, this Court is bound by the Second Circuit's holding in *Cook* and the plain language of Section 2254.") (citing *Griffin v. Cook*, No. 20-CV-589, 2020 WL 2735886, at \*4-5 (D. Conn. May 26, 2020) (collecting cases)); *Jenkins v. Duncan*, No. 02-CV-673, 2003 WL 22139796, at \*3 (N.D.N.Y. Sept. 16, 2003) ("Since Jenkins is a state prisoner challenging the execution of his sentence, this proceeding is properly considered under, and is necessarily subject to, the laws governing habeas petitions brought under 28 U.S.C. § 2254.").

When a court considers a petition under § 2254, the issue arises as to exhaustion of remedies. Unlike § 2241, § 2254 expressly imposes an exhaustion requirement.  The Second Circuit has stated that "Section 2254(b)(1) requires state prisoners to exhaust all available state court remedies before filing a Section 2254 petition, whereas Section 2241 contains no such exhaustion requirement," and "[h]ad Congress intended to make Section 2241 available to state prisoners, it would likely have required, in the interests of comity, that state prisoners challenging the execution of their state-imposed sentences first exhaust their remedies in the state courts." *James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002).[2]

---

[2] Furthermore, even if Green's petition were construed under § 2241, there would be a necessity for him to exhaust his state court remedies before proceeding in federal court. "Exhaustion in the context of Section 2241 habeas petitions is a judge-made rule . . . ." *See Martinez-Brooks v. Easter*, 459  F. Supp. 3d 411, 436-37 (D. Conn. 2020). "While 28 U.S.C. Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism." *Id.* at 437 (quoting *U.S. ex rel. Scranton v. State of New York*, 532 F.2d 292, 294 (2d Cir. 1976))). *See also Lagan v. Edge*, No. 20-CV-2221 (AMD), 2020 WL 3403109, at \*4 (E.D.N.Y. June 19, 2020) ("[T]he Second Circuit has held that federal prisoners must exhaust their administrative remedies before seeking habeas relief under § 2241.") (citing *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001)). Otherwise, Green would be required to demonstrate that "exhaustion in state court would be futile, impossible, or subject him to undue prejudice." *Carter v. Fields*, No. 19-CV-5364 (PKC), 2020 WL 5517241, at \*4 (E.D.N.Y. Sept. 14, 2020) (citing *Steward*, 2020 WL 3574617, at \*3).

Because Green seeks § 2254 habeas relief, the Court will not consider granting his application absent proof that he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner [under § 2254], the prisoner must exhaust his remedies in state court.")*; Coleman v. Thompson,* 501 U.S. 722, 731 (1991) (The exhaustion requirement under § 2254 is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights."); *Rose v. Lundy*, 455 U.S. 509, 515 (1982) ("[A]s a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act."); *Williams v. Reiser*, No. 17CV1040 (JLS) (HBS), 2020 WL 3097181, at *3 (W.D.N.Y. June 11, 2020) ("Section 2254 requires a petitioner to show that he 'exhausted the remedies available in the courts of the State' before a federal court will consider the request for relief") (quoting 28 U.S.C. §2254(b)(1)(A)).

Section 2254(b)(1)(A)'s exhaustion requirement will  afford "the state court[ ] . . . the first opportunity to review [Green's COVID habeas claims] and provide any necessary relief." *O'Sullivan*, 526 U.S. at 844. Exhaustion will also ensure that if Green's COVID habeas petition eventually returns to  federal court, it  will "be accompanied by a complete factual record to aid [the Court] in [its] review." *Rose*, 455 U.S. at 519. A full factual record is important due to the "rapidly changing conditions in prison and the evolving steps that prisons are taking to meet the unprecedented challenges presented by the pandemic."[3]  *Elleby v. Smith*, No. 20-cv-2935, 2020 WL

---

[3] For example, contrary to Green's allegation that "[t]here is no vaccine against COVID-19 and no known medication to prevent or treat infection," Doc. 5, at 3 (¶ 7), Connecticut media has recently reported that COVID-19 vaccinations are under way at Connecticut state prisons. *See, e.g.*,

2611921, at *5 (S.D.N.Y. May 22, 2020).

      To exhaust state remedies, Green must "fairly present [his] federal claims to the state courts . . . to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray v. New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). He will have exhausted his constitutional claims once he has "presented [them] to the highest state court from which a decision can be obtained." *Lewis v. Bennett*, 328 F. Supp. 2d 396, 403 (W.D.N.Y. 2004) (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)). With respect to Green's COVID-19 habeas claims, where the relief sought is not based upon the trial court record of his criminal proceeding, he may, for example, exhaust his claim by filing a collateral post-conviction motion.[4] Alternatively, he may file a writ of habeas corpus in the trial court and seek review of any decision denying that petition. *See, e.g., Elleby*, 2020 WL 2611921, at *3.

      In making this ruling, the Court is mindful that the Second Circuit has cautioned district judges regarding *sua sponte* conversion of habeas motions without first providing the petitioner with an opportunity to oppose conversion or withdraw the motion. *See, e.g.*, *Adams v. United States*, 155 F.3d 582, 583 (2d Cir.1998) (*per curiam*) ("If a district court receiving a motion under some other

---

media website articles regarding Covid-19 vaccinations in Connecticut prisons: https://www.courant.com/coronavirus/hc-news-coronavirus-vaccinations-prisons-starting-20210128-u4vgkouhxjgivi6xtjvvg5zgsi-story.html; https://ctmirror.org/2021/02/23/three-weeks-into-covid-19-vaccinations-doc-has-vaccinated-10-of-inmates-40-of-staff/. *See also* https://portal.ct.gov/DOC/Common-Elements/Common-Elements/COVID19-Vaccine- Information. Under these circumstances, Green may present the full factual details in state court for a proper determination on the merits of his case.

    [4] With respect to a motion in state court, this Court voices no opinion as to the applicable procedural requirements or the likelihood of success on the merits of said motion.

provision of law elects to treat it as a motion under § 2255 and then denies it, that may cause the movant's subsequent filing of a motion under § 2255 to be barred as a 'second' § 2255. Thus a conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated.").

In particular, in *Cook v. New York State Division of Parole*, 321 F.3d 274 (2d Cir. 2003), the Second Circuit held that a state prisoner who challenged the execution of his sentence had to file a habeas petition pursuant to 28 U.S.C. § 2254, rather than pursuant to 28 U.S.C. § 2241. 321 F.3d at 278. However, the Court concluded that the district court should have afforded the petitioner the opportunity to withdraw his § 2241 petition because "converting a *pro se* habeas petition filed under a statute not subject to the severe second or successive restrictions of section 2244 . . . could cause the petitioner to forfeit unnecessarily and unintentionally a meritorious claim." *Id.* at 282 (internal quotation marks omitted). The Second Circuit thus reversed the district court's order, which construed the § 2241 petition as a § 2254 petition, remanding the case to allow the petitioner to withdraw his petition. *Id.*

However, in the present circumstances, the Second Circuit's concern regarding forfeiture of claims does not arise. Rather, the conversion here bears a striking similarity to the conversion in *Hanton v. Lantz*, No. 3:09-CV-774 (CFD), 2010 WL 2232642, at *4–5 (D. Conn. May 27, 2010). In *Hanton*, District Judge Droney (as he then was) explained:

> [T]he concerns raised in *Adams* and *Cook* do not apply to Hanton. A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). . . . Hanton concedes that the second ground in the amended petition has not been raised in any state habeas petition. Thus, the second ground is

> unexhausted and should be dismissed without prejudice. If the Court were to construe the claim in ground two of the section 2241 amended petition as having been filed pursuant to section 2254 and dismiss the claim on exhaustion grounds, Hanton would not be precluded from filing a new section 2254 petition on the ground that it was a second or successive petition under section 2244(b). *See Slack v. McDaniel*, 529 U.S. 473, 485–88 (2000) (holding that habeas petition including new claims filed after an initial petition was dismissed without prejudice for failure to exhaust remedies is not a "second or successive" petition for purposes of 28 U.S.C. § 2244). Accordingly, the court construes the claim in ground two of the amended petition as having been filed pursuant to 28 U.S.C. § 2254 and dismisses the claim without prejudice for failure to exhaust state court remedies. Hanton may file a new section 2254 petition after he has exhausted his state court remedies as to this claim.

2010 WL 2232642, at *4–5. As the court noted in *Hanton*, conversion of a § 2241 petition to one under § 2254 does not preclude the subsequent filing of another § 2254 petition if it is "unadjudicated on its merits and dismissed for failure to exhaust state remedies," *Slack*, 529 U.S. at 486. In that event, it is "not a second or successive petition." *Id.*[5] Therefore, notice of conversion under *Adams* and *Cook* need not be given where a habeas claim, although arising under § 2254, is dismissed for failure to exhaust.

In the case at bar, Green has failed to demonstrate that he exhausted his COVID habeas claims. Furthermore, the two narrow exceptions to the exhaustion requirement in 28 U.S.C. § 2254(b)(1)(A) do not apply in Green's case. A federal court may grant a petitioner's unexhausted petition for habeas relief if: (1) "there is an absence of State corrective process"; or (2) "circumstances exist that render [the State corrective process] ineffective to protect the rights of the

---

[5] *See also Antrobus v. Hynes*, No. 13-CV-2742 (CBA) (LB), 2013 WL 6328131, at *1 (E.D.N.Y. Dec. 4, 2013) (Antrobus's petition is unexhausted and should be dismissed without prejudice. "Because a dismissal for failure to exhaust is without prejudice, I need not give the 'single petition' notice and opportunity to withdraw his petition required by *Adams*.") (quoting *Brodeur v. Warden, Eric M. Taylor Ctr.*, No. 12 CV 5545 (BMC) (LB), 2013 WL 1686527, at *3 (E.D.N.Y. Apr. 18, 2013); and citing *Hanton*, 2010 WL 2232642, at *5).

applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). In other words, a petitioner need not exhaust his claims when "there is no further state proceeding for petitioner to pursue" or where such pursuit "would be futile." *See Elleby*, 2020 WL 2611921, at *4 (*quoting Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)).   Neither circumstance has been established. As Judge Meyers recently stated in a similar habeas action, finding no factual basis for exceptions to exhaustion:  "My conclusion that [the state prisoner's]  petition must be dismissed for failure to exhaust [his or] her  state court remedies as required under section 2254 is consistent with the rulings of many federal courts nationwide that have addressed similar petitions by sentenced state prisoners in response to the COVID-19 pandemic." *Griffin v. Cook*, No. 3:20-CV-589 (JAM), 2020 WL 2735886, at *5 (D. Conn. May 26, 2020). *Accord Williams v. Reiser*, No. 17CV1040 (JLS) (HBS), 2020 WL 3097181, at *4 (W.D.N.Y. June 11, 2020) ("Courts may excuse petitioners from exhausting their claims when relief is truly unavailable, but excusing exhaustion here, where state courts are available, would turn the habeas system upside down. Other courts have reached similar conclusions when faced with habeas petitions seeking release from state custody based on the COVID-19 pandemic.") (citation and internal quotation marks omitted).

Finally, as noted above, the Court concludes that Green may not bring his application in the form of a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which he also cited in his petition. That provision is applicable only to federal prisoners.[6] *See Phelps v. Superintendent,*

---

[6]  Section 3582 permits a district court to "modify" a term of federal imprisonment for, *inter alia*, "extraordinary and compelling reasons" if the defendant has "fully exhausted" certain administrative rights with the Bureau of Prisons.  *See* 18 U.S.C. § 3582(c)(1)(A).  As explained in a recent COVID-19 "compassionate release" case by  Judge Rakoff :

Compassionate release allows a court to reduce a term of imprisonment where, among other things, "extraordinary and compelling reasons warrant such a

*Gouverneur Corr. Facility*, No. 20 CIV. 10352 (KPF), 2020 WL 7711619, at \*1 (S.D.N.Y. Dec. 29, 2020) ("Because Petitioner is in custody pursuant to a state court judgment, § 3582(c)(1)([A]) is inapplicable to him.").  Green is in custody pursuant to a state court judgment, and cannot assert a § 3582(c) claim.

Given the foregoing, the Court interprets Green's COVID claim as a petition for writ of habeas corpus under 28 U.S.C. § 2254, which is  subject to immediate dismissal for failure to exhaust his state court remedies.  He may present his request for relief to a state court.[7]  He is reminded that thereafter should he bring a federal claim – after the present dismissal of his habeas petition without prejudice for failure to exhaust remedies –  that petition will not be deemed a

---

reduction." 18 U.S.C. § 3582(c)(1)(A). Prior to the enactment of the FIRST STEP Act, only the Director of the BOP could file a motion for compassionate release. The FIRST STEP Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, but only after either exhausting administrative review of a BOP denial of his request or after 30 days had passed since he made his request, whichever was earlier.

*United States v. Haney*, 454 F. Supp. 3d 316, 318 (S.D.N.Y. 2020).

[7]  The Court notes that even if Green's habeas petition were properly before this Court, the factual record necessary to make an evaluation regarding "compassionate relief" is inadequate.  He states that he is "above the age [of] 35," which hardly qualifies as an advanced age.  Doc. 5, at  2 (¶ 4).  He also asserts that he "has hypertension," *id.*, a condition which, standing alone, has been found insufficient by various federal courts to establish grounds for COVID-related compassionate release. *See, e.g. United States v. Petersen,* No. 3:16-CR-109 (SRU), 2020 WL 7129705, at \*8 (D. Conn. Dec. 3, 2020) ("[S]everal courts have denied inmates' motions for compassionate release when the inmates' only asserted health condition is hypertension and the inmate has failed to show that the BOP's treatment was in some way inadequate."), *reconsideration denied*, No. 3:16-CR-109 (SRU), 2021 WL 217425 (D. Conn. Jan. 21, 2021); *United States v. Thomas*, 471 F. Supp. 3d 745, 749-50 (W.D. Va. 2020) ("Hypertension, or high blood pressure, a condition that the CDC estimates impacts 43.8% of the United States adult population, alone does not constitute an 'extraordinary and compelling reason.'"); *United States v. Ackerman*, No. CR 11-740-KSM-1, 2020 WL 5017618, at \*5 (E.D. Pa. Aug. 25, 2020)("Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted.").

"second or successive" petition for purposes of 28 U.S.C. § 2244.  His claim is thus not forfeited.

### III.  CONCLUSION

For the foregoing reasons, Green's petition for a writ of habeas corpus [Doc. 5] is DENIED

without prejudice for failure to exhaust state court remedies.  The case is DISMISSED and the Clerk

is directed to close the file.

Because jurists of reason would not find it debatable that Green failed to exhaust his state

court remedies, any appeal from this ruling would not be taken in good faith.  A certificate of

appealability will not issue.  *See Slack*, 529 U.S. at 484.[8]

It is SO ORDERED.

Dated: New Haven, Connecticut
       April 27, 2021

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge

_____

[8] "When the district court denies a habeas petition on procedural grounds without reaching
the prisoner's underlying constitutional claim, a COA [certificate of appealability] should issue when
the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states
a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable
whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484
(2000).